It's the January 25th, 2017 docket. The first case is 516-0199, Harlan Jones versus, well, versus the State of Illinois Property Tax Appeal Board. And we have Mr. Garavaglia. I always have trouble with that one, but that's okay. Go ahead, restart. Mr. Garavaglia representing Harlan and Phyllis Jones, the appellants in this matter. Counselor here. Welcome you. Basically what this is is a tax case, real estate property tax, mobile home privilege tax. It either is or it's not. It's kind of like this slide right here. We consider that personal property, and usually we consider trailers personal property until about January 1 of 2011 when we were in the law phase. And I think what that federal law said, something I'm trying to quote is that the general gist of it was that anything taxed under the mobile home privilege tax before January 1 of 2011 would continue to be taxed under the mobile home privilege tax. That's manufactured homes, that's mobile homes, that's trailers. What Mr. Jones said here is it's going to be a manufactured home. That's the definition of that. It has three titles to it. And that's going to continue to be taxed until such time as it's moved. It could be moved to another location. It could be sold, be purchased, like a real estate transaction, be taxed, be for the real estate. Those there will be entitled to the manufactured home. And then as far as the handling of that, this would always be real estate tax at that point. So if it was moved, it would have been retaxed as a real property? Yes. Or would it always have been grandfathered in had they filed it appropriately? Well, that's another issue, had they filed it appropriately. Well, isn't that the issue? That's apparently the issue, yes. I mean, doesn't it come down to if they would have made the filing in 30 days, everybody would have known it was a mobile home? Well, we would have thought everybody would have known that, but apparently Mr. Jones went out there and saw it, and he didn't know it was a mobile home. So I don't know if I can answer that question exactly, but that statute does say, and I'd like to find that real quick, and I'll just say that, and it says, Failure to record or surrender the title or certification of origin shall not prevent the home from being assessed and taxed as real property. Well, that's not a penalty there. That just says failure to do that shall not prevent it from being assessed and taxed as real property. It doesn't say it has to be taxed as real property. It says it can't prevent it there, and I think if you look at the intent of the statute, I'll get back to this moving thing. If it's there before 2011, January 1, and it's a manufactured, or a trailer, or a mobile home, and it's sold, then it becomes real estate after that. If it's moved, it becomes real estate. It doesn't transfer, but if it's moved to a mobile home park, it's still personal property. Technically, it can be moved. It can be taxed as real estate. It can get moved to a mobile home park and be taxed as mobile home privilege tax, and it depends on the situation there. So we've got this life. It could be real estate, or it could be personal property, depending on where it's located. But there's a grandfathering clause, isn't there? That had it been. So there's no specific statute that says it would be grandfathered. Well, the statute says if it's taxed under the mobile home privilege tax on January 1, 2011, it will continue to be taxed under there. Especially if it was a mobile home park. Yes. Right. Which this one wasn't. It doesn't have to be in a mobile home park to be taxed as personal property or mobile home privilege tax, because the trailer is not attached to it. And then the fact here is that the manufacturer's home is one or two inches above the block foundation. It's on pylons. It's tied down. It looks like it's on the foundation, but it's not. So it's not attached to the real estate there. But the issue here is, whenever you look at the statute, the statute says taxed as mobile home privilege tax and taxed as real estate on January 1, 2011. This property wasn't taxed as either. What was it taxed on? It wasn't taxed. The manufacturer's home was not taxed as real estate, and it was not taxed under the mobile home privilege tax on the date of the statute, which is January 1 of 2011. In fact, whenever you look at the facts of the case, I'll just do a timeline. Mr. and Mrs. Jones bought this property in 2009. They ordered this manufacturer's home from the state of Mississippi, where they lived and where he worked, and it transferred up here to Illinois. The title work, whatever the Secretary of State, other titles, it paid the taxes in May. The house was assembled at the end of May. Then there was water in July, or electricity in July and water in August. Then they proceeded to move in. This is in June, July, and August of 2010. The way taxes work, and we cited the statute there, the tax assessor, who is Mr. Owens, he's a contract assessor for Browning Township, he's required by law to turn his books in the third Monday of June. So the facts of the case would show that this is not even inhabitable as of June, because when it didn't have electricity, it didn't have water. So taxes are always a year behind. If he had got that in June of 2010, then it would have been assessed in 2011 for the 2010 taxes, because taxes are always one year behind, or you buy or sell real estate or whatever, pro-rate taxes based upon last year's taxes up to the date of possession of the buyer there. So what we have here is Mr. Owens came in 2011, before June of 2011, and turned in this as real estate, and the notice went out in November of 2011 saying this is taxed as real estate on January 1 of 2011. So if you look at the statute, it wasn't taxed in either four. So no tax bill went up, because it kind of missed the deadline there. Somebody kind of missed the deadline, yes. Because of the June tax book closing. Really, the taxes, after you turn in by the tax assessor the third Monday of June, there's a supervisor assessment, those books are closed, and then by the end of that year, November, December, the Board of Review sends out their new assessments, and puts that on record for the tax year there instead. And one of the key things that we would want to argue in this matter is that memorandum of the Illinois Department of Revenue, which is in the record and mentioned here, as far as in the brief, and it says, and it's really clear here how the Department of Revenue feels about this thing, how are mobile and manufactured homes assessed if they were installed in 2010, but after the assessment cycle was completed, not on the tax rules, end of parentheses, question mark. It says the Department advises that these homes should be assessed uniformly with other mobile and manufactured homes in the county, as provided in the Property Tax Code and Mobile Home Local Services Tax Act. In effect, for assessment year 2010. If mobile or manufactured homes on private property were assessed as real property, then that same classification should be used. However, if the mobile home or manufactured home of similar construction were taxed under the Mobile Home Local Services Tax Act, then the home should be taxed under that Act. Mr. Owens testified, the tax assessor, that mobile home and manufactured homes are taxed under the Mobile Home Privileges Tax in Franklin County and not taxed as real estate. It appears that this, you know, the statute is real clear. If it's taxed as real estate, it's real estate. If it's taxed as Mobile Home Privileges Tax, it's Mobile Home Privileges Tax. In this particular case, it kind of hits the stone up, which the statute and legislature did not address, but apparently the Property Tax Review Board of the Illinois Department of Revenue said, what if they're installed in 2010, but after the assessment cycle is completed, not on the tax road? And they said at that point in time that that should be what is normally done in the county. I'm sorry, what is the citation of the record on that document? I've got R47 here at the bottom of my copy. Was it attached to something? I don't see it. I don't either. Okay. No, that's fine. It was not in the appendix, and so I had not seen that before, so I was just wondering. But we'll look it up. It's R47. Thank you. Yeah. Actually, the Joneses brought this problem upon themselves, correct, by not filing the certificate within the 30 days, but you're saying that that has no bearing on the fact that it was assessed as real estate? Yes. I'll just correct. They didn't turn this thing in like the law says they're supposed to, but the law doesn't say if you don't turn it in, you get penalized for not doing it. And that's the argument there. Technically, I guess if you read that and you don't do that within 30 days, you're guilty of a Class C misdemeanor. I think that's what it says there under the Moe Home Act and then under the new law here. But it does say, failure to do so, failure to record or report the title or certificate of award shall not prevent the home from being assessed and taxed as real property. That's not to say it shall be taxed as real property. So that's a separate remedy. But what about the fact that the statute does say if it had been assessed in 2010 and it wasn't? Well, the only thing I can say to that is the books are closed on the third Monday of the year in June. So you're saying that that would have been the problem of the tax assessor's office? Even if they had done this within a 30-day period like the law says. They still wouldn't have fallen? They still wouldn't have fallen on this note, I hope, because there was no order like Christine's until July or August. This place was not habitable. Just because you're under construction doesn't mean you're going to be fully taxed this way. That's not fair. The argument is here, just a legal argument, if it's not taxed as real estate, if it's not taxed as mobile home privilege tax, then you look at what it should have been taxed. In Franklin County, mobile homes are taxed under the Mobile Home Privilege Act. But isn't this law then take effect? If it wasn't inhabitable within the time for a tax assessment in 2010, doesn't it bring it then That's what the law seems to imply. However, it doesn't require that you be taxed as real estate if you fail to do that. Now, that's the argument of the Property Tax Review Board. Since it says it's failed to do all these things, like 30 days, which is really strange. If you look at mobile homes and manufactured homes, you've got these extra hoops to jump through to register your house. You can go out and build a mansion out here if the tax assessment says come by and see it. The thing is never taxed as real estate. So that's law is law. Unfortunately, this is a case of first impression. There's no case law on this particular issue. Even under these statutes, there's very few case laws. There's probably more Attorney General opinions than there are court cases on these particular statutes. Was there an Attorney General opinion on this one? No, ma'am. I'm just saying, if you look at all the research that was involved, Attorney Generals are back in the 70s and 80s and 90s. Did you raise a due process argument as a part of your litigation? No, not under this factual scenario, we did not. And you never alleged that this particular statute was unconstitutional? No, that was not alleged in this pleading, nor in the factual case. Just in conclusion here, I would say, unless the court has other questions, there's nothing in the statute for tax purposes that penalizes the manufacturer and homeowner for not registering and only going to get 30 days of install, even 30 days after January 1, 2011. You know, that's interesting how they came up with this law. And so, you know, if this court rules that you fail to register these things within 30 days, you know, that's what the court decides. It's not like we're all going to pick up and go to jail on this one. Is it a tax issue? You know, it's not. You know, just by their own memorandum, if it falls through the donut hole, we tax it when it should have been. You know, if it falls through the donut hole and you don't register this thing, then you're penalized. And that's the strangest thing to take a mobile home title or a certificate of origin and take it over to the county clerk's office and say, I need to record this because that's what the law says I've got to do between January 1 and January 30th. I've got 30 days after that of borrowing. That's the strangest law. And I think the whole intent of that thing was you could prove, by registering during that 30 days, that that thing was there before that point in time, that you could prove your existence. You even had to show who the occupants were on that court. You know, like kids, wives, probably mother-in-laws, too, who ever occupied the home in a deal like that. And that even gets interesting on that transfer request. Let's say the owner would die and somebody would inherit that. Well, by inheriting it, that changes it in the real estate at that point in time. It just decides these types of matters. You know, that's the strangest law to say you've got to register your mobile home or else you're going to be taxed with real estate on it. I think the idea was to classify it at that point in time, especially when it says it shall not be presented for being taxed as real estate. But on the flip side, there's no reason to say it should be taxed as real estate if you don't see things. And that's the issue. I only have one other question. If they would have filed in 30 days, let's say by November, would Franklin County have put them on the tax rolls at that time as mobile homes? You say by November of what year? 2010. If they would have filed by November of 2010? I think the law was clear and Mr. Owens' testimony was clear. He said he turns in his books in July. But the law says you've got to turn them in the third Monday of June. Okay. So they close the books the third Monday of June. Yeah. But my question is, at some point they have to reopen them. Like it's the third Monday of June, then something's going on for those next 12 months. So if they would have actually followed the law, let's say filed by the end of November 2010, would Franklin County have then registered them on the rolls at that time so that by the next closure, by January 1, 2011, he would have already been on the books, so to speak? But it says assessed within 2010. And that's what I'm asking is, if they would have filed, would somebody have come out, looked at it, and even if Mr. Owens thought it looked like a house? It clearly had a vehicle registration for it. Well, my honest opinion, I'm going to give it to you. I'll pass it to the Supervisor of Benton Township, and the answer is no, he would not. Well, regardless, they have a certificate from the Secretary of State that says it's an energy-manufactured mobile home. So, I mean, it's not like it looks like a duck, walks like a duck, hangs like a duck, you know? It is a duck. So following up on that, did he testify, the assessor, that there was a time that he was obligated to go out and assess it prior to the official assessment that's filed? Yes, he picked up the assessment in 2011 before he posted his books out in June of 2011. Wait, excuse me? He picked up the assessment in June of 2011 whenever he did his assessment under the 9-1-1. The county sends out 9-1-1 addresses. I see. Whenever he turned in his assessment books in June of 2011, that's what generated this assessment of real estate that came out in November of 2011 that comes back in January of what? Okay. So you're always lucky to get it. You're always lucky. You're behind on the assessment thing. When he closed out his books in June, I guess the supervisor assessment office had a chance to go ahead and send out their notices of assessment or reassessment before the end of the year. Then that's where the Board of Review can appeal these things and do a forward on that. And so whenever he saw this thing in June of 2011, he thought it was a house. When he turned his books in, the supervisor assessment sent their notices of assessment out in November of 2011, saying this is real estate. And that's where Mr. Jones filed his Board of Review objection, and that's how this thing got this property tax due. This is our report for here today. Okay, so I know this is going to be brief, but one last question. What was the date that Mr. Owens actually assessed the property? Do you remember? I don't think he says exactly the date, but he goes out in the following year. It wasn't until 2011. Yeah, definitely. It was only until 9-1-1. I can't give you May the 29th of 2011 or anything like that, where he definitely assessed the thing. He was out there under the 9-1-1. They sent out those notices. They sent that out to supervisors and tax assessors. He used to go out and assess these things. He was a contract assessor in Browning Township and an elected assessor in Midden Township. But under your analysis, even if the owners had turned in the certificate within 30 days, it would have never been assessed in 2010, correct? Correct, Your Honor. Okay, but doesn't the statute say that it has to be assessed in 2010? It says mobile homes, blah, blah, blah, that are classified, assessed, and taxed as real property on the effective date of the mandatory act, must continue to be classified as such. If it's located outside of, I guess I could have skipped that, the home must be considered chattel and it must be taxed according to the Mobile Home Local Services Tax Act. Okay, it wasn't classified, assessed, and taxed at all prior to the 2000 and January 1st, 2011. Correct. But my question remains that if they had filed, when was there a duty on the part of the assessor to go out and assess it? I thought he just said the next year. So it would have been the next year. So there's no way they could have complied. Yeah, there's no way they could have complied. It doesn't matter if they had filed the certificate and it doesn't matter if everybody was on notice. Yeah, that's right. Okay, thank you. Thank you, Your Honor. Thank you. I'm sorry, I was just making a note. Who's going first, Ms. Quinn or Ms. Levanti? Ms. Levanti. Levanti? Okay, Ms. Levanti, when you're ready. Thank you. Your Honor, may I please support Amanda Levanti, representing the Franklin County Board of Review? Your Honors, we believe this is pretty much a clear case pursuant to the statute. The property tax code was amended January 1st, 2011. The statute provided that from that point on, any manufactured homes, unless they are in the local home lot, are to be assessed and taxed as real property. The statute does provide a grandfather clause saying that any homes that have previously been taxed as local homes under the privileged tax can continue to receive the benefit of being taxed that way under the privileged tax until the home is sold or transferred, at which point it will fall under the statute as amended January 1st, 2011. It will be reassessed as real property unless it's in a local home lot. This is a case where we're not disputing whether the home was in fact a manufactured home or not. We're not disputing that. We are disputing the fact that the Jones put their local home on a private lot. It was not in the local home part. They did not file the registration within 30 days. And the statute provides that it's the homeowner's responsibility to file a registration within 30 days of installing their local home on a lot. Okay. Explain to me what difference that makes because I'm not real clear on that. I understand they have the duty and they didn't adhere to it. Well, we believe if they had done that within the 30 days of installing the home, if they had filed that certificate within the 30 days in 2010, if it was before Mr. Owens completed his assessments for the 2010 year, he would have been on notice that it was a local home, it was a manufactured home. But they couldn't have complied because it wasn't ready. It wasn't ready until later that year. So everybody from the third Monday or Friday of June is when his books closed? Correct. Everybody in that situation who registers within 30 days is not going to get assessed. Is that true? That's true. Even if they had filed it after the July of 2010, if they had filed it during the year 2010, later in 2010, Mr. Owens still would have known that it was a manufactured home. But what difference does that make under the statute? I don't have any trouble with the analysis here. It still wouldn't have been taxed. It would not have been taxed in 2010, no. It would have had to wait until the 2011 assessment. In fact, it wouldn't have been assessed. In 2010, no, it would not have been. Because it would have been. He turns in his assessments in early July of 2010, so it would have been after that point. The fact that Mr. Owens didn't know that it was a mobile home in 2010 because nothing was filed, now there's no doubt in his mind I'm assuming that it's a mobile home. Now there is no doubt that it is a mobile home. I believe... So if he had been mistaken in 2010 that it was not a mobile home, and then later found that he had made a mistake and that it was a mobile home because of how those manufactured homes are built to look just like a stick-built house, he could have corrected his mistake. In the record, there is testimony by Mr. Owens. This issue did come up about whether if he had known before he sent in his 2011 assessment that he had known at that time that it was a manufactured home, what he would have done. I believe his testimony was that he would have to confer with the other assessment officials. He wasn't sure exactly how that would affect how he would classify the property. But his testimony was that he received a list in 2011 when he went to go do the tax assessments for 2011. He received a 9-1-1 list that had this property on it. So he went out to look at that property because he had not been noticed at that property before. It did not appear to be a manufactured home. It appeared to be a regular what they call stick-built home. So that's how he had assessed it. I guess my point is it doesn't matter what he thought the home was, not then and not now. Correct. Because if they couldn't comply in 2010 to meet the statute deadline of January 1, 2011, it doesn't matter how he thought it, it was going to be assessed as real estate because it hadn't been assessed mobile home privilege or whatever before that. But you're saying that if he had known that it was, in fact, not real estate, that you would have allowed the application of the privilege, is that right? So that's where the whole thing is unraveling. I don't think she's saying that. No. Not exactly, Your Honor. I'm sorry if I'm being unclear. I believe that the answer is a little unclear. I believe he would have had to do some further research into it and how this property would fall into being a tax since he would have been aware it was a mobile home. There's no provision in ISAW for allowing the assessor to go back and correct. Because here, as somebody described it, there's a donut hole. There's a donut hole between the time you all close your tax records and the assessment that begins again in the next year, right? I mean, he doesn't continue assessing throughout the rest of 2010. He gets a list sometime in 2011 and he starts again, right? So I didn't see anywhere in a statute where they can go back and correct, just as Barbaros was explaining, or has to. Plus, it does say it has to be taxed. Correct. And it was never taxed in 2010. So I guess it seems to me that part of your argument is kind of helping. When you're saying that if he had known, then perhaps if the assessor had known, perhaps they would have applied perhaps the Privilege Act. I don't understand your position. I believe that what Mr. Owens had testified is that he would have had to check into it. But the statute does provide that to be grandfathered in, you have to previously have been taxed in 2010 or prior to that as under the Privilege Tax. And this home was not previously taxed as Privilege Tax. It was not taxed at all. The first time it was taxed was in 2011. And regardless of whether or not he filed a certificate, it was never going to be taxed in 2010, right? Because they could not have filed their certificate in time in 2010. Right, the books are closed. Yes. So I guess where I'm a little bit confused, and it's not you. I know you apologized for not being clear. I don't think it's you. I think it's the case. But it doesn't matter from where I'm sitting, it doesn't seem like it makes any difference what Mr. Owens' thoughts were or that he needed to go back and check. I mean, assuming that someone has checked since then, the law is what the law is. He either had the right to modify and change the assessment or he didn't. And I believe what we're suggesting is that he didn't have that right. Well, at least it's on the statute that I see. So, in other words, Mr. Owens' opinion as far as what it was and when he discovered what it really truly was doesn't really have a whole lot of bearing on the outcome of the case. It does not, Your Honor. Okay. I believe I was just referring to a statement that Mr. Owens had made in his testimony saying that if that issue had come up to him, he would not have known. He would have had to confer. Okay. But under the clear and unambiguous language of the statute, it does say the home has to be previously taxed under the privileged tax to continue to be grandfathered in and to continue to receive that privilege of being taxed. And there's also a case I cite in my group, People X-Ray Casa Bombs v. Hopkins. That case does say that when statutory provisions granting tax exemptions or preferential tax treatment should be strictly construed in favor of taxation. And if you follow strict compliance with the statute, we believe that the home was not previously taxed under the privileged tax, so it should not be classified as under the privileged tax in 2011. So, just to clarify one other item, if the owner had filed the certificate on time, you're saying it would have been assessed and taxed in 2010? Or do I have that wrong? He would have had to file the registration before Mr. Owens completed his 2010 tax assessments in July. And when did, again, if you can refresh me, that he, 30 days would have been up when? There's some discrepancy on when the home was actually installed. You can go ahead and finish that. It was kind of installed in phases, I guess. Does that mean when it's inhabitable? Does that tie in with the installation or not? In other words, when you have to report it. Right. When does it begin? It begins when the home is fit for occupancy, when it can be habitable. Okay. So, if that went after whatever date he assesses and turns it in, it's moved anyhow, correct? If that 30-day window came after Mr. Owens had turned in his assessments for 2010, which I believe he turned those in in July of 2010, he would not have been able to change that. It would have had to wait until the next half year to be assessed. I have another question, and we'll give you additional time, Mr. Corvallio, in light of this. If he would have been taxed as a mobile home versus real property, what do you think the difference in cost would have been? Your Honor, I apologize. I'm not sure exactly what the difference would have been. Several hundred dollars? I mean, are we talking about a substantial? I don't believe it would have been a substantial amount. I do not have an actual number to give you. Was that brought out at the hearing that somebody might be able to give us that? I don't recall it. An actual number, I don't recall an actual number of the value being brought out. Okay. All right. Justice? No, I'm finished. Okay. Thank you very much. Thank you. Ms. Quinn? And we'll give Mr. Corvallio whatever extra time we want. Huh? Okay, well, we'll just ballpark it when he gets back up here. I'd say it was a minute 30. Okay. I'm sorry. Ms. Quinn, you may proceed when you're ready. May it please the Court, I'm Valerie Quinn. I'm here on behalf of the Property Tax Attorney Board. As the Court is well aware, the Property Tax Appeals Board's final administrative decision is reviewed for clear error, which is a fairly deferential standard. I wanted to start out with the law that the Amendatory Act, the one that took effect on January 1st of 2011, 35 ILCS 515-4. In the first paragraph, it says that for the owner of each inhabited mobile home not located inside a mobile home park, on the effective date of this Amendatory Act, which was effective January 1st of 2011, shall, within 30 days after the date of this Act, file to register. So it's almost as if the amended statute gives mobile home owners who are not located in a mobile home park an extra window within which to satisfy the statute's requirements in order to get the privilege tax. So, again, does this turn on when it really was inhabitable? No, this doesn't. I don't believe it turns on when it was inhabitable. It is simply that there was a little extra time for them to comply with the law's requirements in order to get the privilege tax. But within the donut bowl or not is, I guess, then my next question. If there's a period of the remainder of the year after he turns in his assessment, which is the issue I think that was up before the Board on Department of Revenue illustration, where that's what they talked about, the donut bowl being right after the assessment's been turned in. But this one doesn't fall within that. Is that correct? It should have been. The certificate should have been turned in before and would have allowed an assessment. For 2010? For 2010. We're talking 2010 at the moment? Yes. Yes. The Department of Revenue has interpreted the Amendatory Act as, okay, well, if you're completed, but the tax rolls or the assessments and everything is closed for that year, but everybody else who's in your situation is getting taxed at the privilege tax rate, then you get it too. But here it was completed before? Yes. Okay. So that's the? Yes. I'm not following that. I apologize. I'm sorry. I'm not following that. How can I? Just start it again. I'm sorry. I'm looking at the donut hole, and I want to know how you got around, how people generally, not maybe even this case, how people get around the donut, what we're calling the donut hole, between the closing of the books, so that the donut hole is clearly defined, closing of the books and the effective date of the statute, 2011. How people get around that donut hole is to file by January 31, 2011, because the Amendatory Act gives them that extra time to do it. Where does it say that? I don't see that. We're talking about? Yeah. What I'm reading from is section 515-4, the one that says effective January 1, 2011. Okay. 515-4. Okay. Actually, it's in my appendix, in the board appendix. It's a supplementary appendix. I've got 5. Yeah. I don't know. It's that first paragraph. Okay. It's page 3. Oh, okay. Yeah? Okay. It's what paragraph? I'm sorry. It's that first paragraph of 515-4. Okay. Can you walk me through that now? Okay. The owner of each inhabited mobile home located in the state, but not located inside a mobile home park. So that's the Joneses and people like them. On the effective date of this amendatory act, shall within 30 days of that date, effective date of this amendatory act, file with the township assessor the document that they should have filed. So the act itself gave them an extra 30 days. The act itself seems to indicate that if they had filed within that 30 days, even if they hadn't been taxed previously, they had an extra chance to get the privilege tax rate. They could have done it into early February. Into early February? Well, that's when you're saying the effective date was January, so they had 30 days of that. Right. 30 days from January 1st. I don't see where you're making the jump, though. I'm with you until the language, up to the period. So you have an extra 30 days, which we know there's a criminal penalty associated with the failure to file. So isn't it just as likely that this 30 days is a saving grace for the avoidance of a criminal penalty? I don't see the jump that you're making in this statute. Well, as I read the statute, this is the reason. The county assessor testified that when she knew that the statute was going to change, she started mailing out notices to everybody that she had within her purview who was not in a mobile home park but was being taxed at the privilege tax rate and saying, you know, hurry up, make sure you get your registration in. I'm not sure they would have needed it because if they were grandfathered by statute because they didn't pay the taxes. But she did the best she could to notify everybody that was on her list, plus she published notices about the change in the statute in three local newspapers. Because it seems to me as the county read it, okay, hurry up and get this registration in because this window is going to close at the end of January 2011 and you won't be able to take advantage of it anymore. You know, it's unfortunate. This is, again, the same section. Failure to record or surrender the title shall not prevent the home from being assessed and taxed as real property. So it's not saying that you have a 30-day window. And, of course, it doesn't say why we get an extra 30 days. But it's just as logical to conclude that you're avoiding a criminal penalty. I mean, because it seems like the statute goes on to say if you're not in a mobile home, you get all these things and here's what you have to do. But it clearly says toward the end of that paragraph, Failure to record shall not prevent the home from being assessed and taxed as real property. So I don't understand the argument you're making that they had this extra 30 days to correct the donut. That's my concern. And in any event, in a way, it's not even relevant to the Joneses' situation because they didn't. . . No, but if they had a way to correct the 30-day donut, then that might make a difference. But here's a concern I have. See if you can help me with this. If the assessor wouldn't tax them at $500, let's say that their tax bill for 2011, because they were before the closure of the books, was $500. And now, because of the way the county does their books, that is, we close the books at the end of June. And merely because of the closure of the books, we can't assess you, we can't tax you. So now, you can't get into this problem with the donut. We can't fix it. So now we're going to tax you $1,000, even though your home has not changed. You are still in a manufactured home. Do you see a due process problem with that? If all of a sudden, just because of the mechanics of the county, I'm charged twice? I believe it's not merely the mechanics of the county, Your Honor. I believe, in fact, I think the appellate quoted a statute that the county has to close its assessment, turn its books in by the third Monday in June. So it's not just the county. Okay, but it's the way you have to operate. It's the constraints of the statute. Frankly, Your Honor, and the Tax Appeal Board even says it in their decision, the Joneses present a very sympathetic case. The Tax Appeal Board interpreted what it had before it and the statutes in the only way that it could. The law seems to make it pretty clear that, yes, there are results, but they do obtain in this case. Certainly, the Joneses did the best they could. They did everything they knew that was required of them under the statute, the Secretary of State, registration, and so forth. And the county did the best it could trying to notify anybody who might be, you know, who might get caught up in the doughnut hole, I guess, as everybody's starting to call it. Well, how do we get by the, I mean, the very first sentence, fourth, fifth word, the owner of each inhabited mobile home located in the state, I mean, they weren't going to be in, they weren't living in the home. They were still being, you know, even they had been. I beg your pardon, Your Honor. I do believe that they were living in the home. By the time that this statute became effective, they were living in it. They were living in it in the middle of 2010. Yeah. I thought they moved in. I had no idea. I thought it was like July of 2011. No. The court didn't make a finding of the exact date. Go ahead. But certainly by the effective date they were in there. Okay. Unless the court has any further questions. Justice. No. Okay. Thank you very much, Mr. Garibaldi. I just want to just maybe answer the question that you asked counsel to answer. What would the taxes be, real estate versus mobile home privilege? And I'm not a tax assessor, and I'm not certified to be a tax assessor, but if you look at the decision of the Property Tax Review Board, based on the fair market value of this property, whether it be real or personal or mobile home or manufactured home, it's $110,578. The way that would be calculated, Your Honors, is you take that number there and you minus $6,000 for an owner-occupied exemption, but you'd have to be living under there on January 1st of the year. 2010 or 2011? January 1st of 2010. They were not living there. I'm not going to sit here and say they were living there January 1st of 2011. They're a transfer from Mississippi. They had trouble filling their house. But they don't get the exemption. They don't get the exemption. If they're not living there on January 1, they're out. If they're there on January 2, you're not eating. You know how it is. It's like that. But anyway, if you take this $110, and I did some rough numbers here, I think I'm pretty close, and you divide that by three, so you come up with $36,666 minus $6,000 owner-occupied exemption, assuming it's the first of the year, for sure by 2012 they're there. That comes out to $30,000, $666 assessed valuation. I think in Browning Township, the tax rate is about 8%. It's 10.2 in Bison Township. Or it's 9.2 outside of the city in Bison Township. Browning Township is a little bit cheaper tax-wise. I'd calculate that at $2,453.33. As far as if there's a mobile home with square footage there, we have about 3,000 feet. I'm going to guess from this with the $6,000 owner-occupied exemption, it would be about $500. Then we've got the tax on the land, which I believe is $150, and I'm just guessing at that without looking at it, but it seems like I recall that. I think the whole crux here is what is the status of this thing on January 1, 2011? It's either taxes on real estate or taxes on mobile homes, and after that date, everything shifts as far as this report yourself, turn yourself in, here's my family, and we all occupy this thing. That should not prevent it from being taxed as real estate, but it doesn't say it shall require it to be taxed as real estate. I think that's a cutoff point. I think we proved in this litigation that that thing was there way before that. I just want to talk to you briefly about, let's say she was building a house and is halfway done with it, and I'm just going to draw a little thing, halfway done with it in June. They're not going to tax that house. They're going to wait until the next year and come back and look at that house, and if it's finished, then that will be the year that they're going to tax the thing. So I just want to kind of bring that clear with this taxation on this June 3rd week of the year. But with the change in the law that occurred on January 1, 2011, that's when you're going to be taxed in 2011. Correct. One of the issues we have, which nobody's really addressed, is the standard of review here. I mean, we're not reviewing the circuit court, right? No, you're reviewing whether the decision of the property tax review board was erroneous or not erroneous. That's your standard to make that determination. We have to go way back a couple steps removed. Yes, and we feel the decision is erroneous under the statute. That's the position we have adopted. Thank you. Unless you have any further questions. Thank you. Thank you. Okay. It's a very interesting case. This matter will be taken under advisement, and a decision will be rendered in due course.